UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WAYNE WELCH , et al.,

    Plaintiffs,

v.                                                                                  Case No. 2:06-cv-230
                                                                               HON. GORDON J. QUIST
PUC SERVICES, INC., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiffs Wayne Welch, Charlene Welch, Dejay Bumstead, Sherrie Bumstead, Jon Morley, Sharon Morley, Lawrence Campeau, Bonnie Campeau and Kevin Oulette filed this action against defendants PUC Services, Inc. and PUC, Inc. Plaintiffs own property on Sugar Island in the City of Sault Ste. Marie, Michigan. Defendant PUC, Inc., is a corporation owned by the municipal corporation of Sault Ste. Marie, Ontario, Canada. Defendant PUC Services, Inc., is corporation owned by defendant PUC, Inc. Defendant PUC Services, Inc., treats raw sewage that is discharged into the St. Mary's River. Plaintiffs allege environmental damage to their property and personal injury against defendants. On September 20, 2006, defendants filed a motion to dismiss this action for lack of jurisdiction. The parties have fully briefed the issues and the matter is ready for decision.

Plaintiffs are owners of property located in the United States and sue two Canadian corporations for damages, maintaining that 28 U.S.C. § 1330 provides this Court with jurisdiction. Section 1330 provides that district courts have jurisdiction over nonjury civil actions against a foreign state, as defined in section 1603, that is not entitled to immunity under sections 1605-1607.

Defendants removed this action to this court and now move to dismiss for lack of jurisdiction under the Foreign Sovereign Immunities Act (FSIA) and for lack of personal jurisdiction. "[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). " Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies." *The Permanent Mission of India to the United Nations v. New York*, 551 U.S. __, slip op. at 3 (2007).

Immunity under the Act is provided to a foreign state, an agency or instrumentality of a foreign state or an organ of a foreign state. 28 U.S.C .§ 1604 provides:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

However, there are exceptions to immunity. For example, immunity will not be granted where a commercial activity causes a direct effect in the United States, or in some cases where a tortuous act causes damage to property in the United States. 28 U.S.C. § 1605 provides in part:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –
>
> * * *
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

* * *

    (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortuous act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to –

    (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

    (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights;

28 U.S.C. § 1603 provides definitions of terms used in the statute:

    For purposes of this chapter –

    (a) A "foreign state," except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

    (b) An "agency or instrumentality of a foreign state" means any entity –

    (1) which is a separate legal person, corporate or otherwise, and

    (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

    (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

    (c) The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

> (d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
>
> (e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

Defendants argue that the FSIA requires dismissal of this action. Plaintiffs claim that defendants are not a foreign state or political subdivision of a foreign state. Plaintiffs also claim that defendants engage in commercial activity so the immunity statute does not apply. Defendants argue that PUC Services, Inc, is a wholly owned subsidiary of PUC, Inc., and the City of Sault Ste. Marie, Ontario, Canada, owns 100 percent of the shares in PUC, Inc. PUC, Inc., is a Province of Ontario corporation. The East End Water Pollution Control Plant, where the discharge allegedly originates, is owed by the City and the plant is operated by PUC Services, Inc., under contract with the City.

Plaintiffs argue that PUC Services, Inc., is not an agency or instrumentality of the state because it is a wholly owned subsidiary of PUC, Inc. Plaintiff cites *Dole Food Company v. Patrickson*, 538 U.S. 468 (2003), for the proposition that only direct ownership by a foreign state or political subdivision satisfies the statutory requirement. In *Dole Food Company v. Patrickson*, the plaintiffs filed suit against Dole Food Company which impleaded Dead Sea Bromine Company and Bromine Compounds, Ltd., into the action. The United States Supreme Court analyzed whether a corporate subsidiary can claim instrumentality status when a foreign state owns the majority shares of the parent corporation, but does not own the majority shares of the subsidiary. In that case, the Bromine corporations were separated from Israel by one or more corporate tiers. The Court found no direct ownership interest by Israel. The Supreme Court resolved the matter by stating that the

lower court was correct to hold "that a subsidiary of an instrumentality is not itself entitled to instrumentality status." *Id.* at 473. The court, in concluding that the FSIA did not apply, stated:

> The Dead Sea Companies, as indirect subsidiaries of the State of Israel, were not instrumentalities of Israel under the FSIA at any time. Those companies cannot come within the statutory language which grants status as an instrumentality of a foreign state to an entity a "majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." § 1603(b)(2). We hold that only direct ownership of a majority of shares by the foreign state satisfies the statutory requirement.

*Id.* at 474. The court further explained:

> An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own the subsidiary corporations in which the corporation holds an interest. . . . A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary. . . .
>
> Applying these principles, it follows that Israel did not own a majority of shares in the Dead Sea Companies. The State of Israel owned a majority of shares, at various times, in companies one or more corporate tiers above the Dead Sea Companies, but at no time did Israel own a majority of shares in the Dead Sea Companies. Those companies were subsidiaries of other corporations.

*Id*. at 475. Under this authority, it clear that PUC Services, Inc., is not an instrumentality of a foreign state or political subdivision. However, it is equally clear that PUC, Inc., is considered a instrumentality of a foreign state or political subdivision, because the City is the direct owner of PUC, Inc.

Defendant PUC Services, Inc., nevertheless argues entitlement to immunity because it is an "organ of a foreign state" as defined in § 1603(b)(2). The issue of what constitutes an organ

of a foreign state has been addressed by several courts.  In *Filler v. Havit Bank*, 378 F.3d 213 (2d Cir. 2004), the Second Circuit listed several factors as relevant in determining organ status:

> (1)  whether the foreign state created the entity for a national purpose;
>
> (2)  whether the foreign state actively supervises the entity;
>
> (3)  whether the foreign state requires the hiring of public employees and pays their salaries;
>
> (4)  whether the entity hold exclusive rights to some right in the [foreign] country; and
>
> (5)  how the entity is treated under foreign state law.

*Id.* at 217, citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846-47 (5th Cir. 2000), and *Corporation Mexicana de Servicios Maritimos, S.A. v. M/T Respect,* 89 F.3d 650, 655 (9th Cir. 1996).

The Ninth Circuit in *EIE Guam Corporation v. Long Term Credit Bank of Japan*, 322 F.3d 635 (9th Cir. 2003), held that a Japanese corporation was considered an organ of Japan because it was organized to collect bad debts that were insured by the government.  The controlling factors when considering organ status include the circumstances surrounding the entities creation, the purpose of its activities, its independence from the government, the level of government financial support, employment policies and obligations and privileges under state law.  *Id.* at 640.  The Japanese corporation was considered an organ of Japan because it was created to carry out national policy, created under the law of Japan, and other companies were not permitted to perform similar activities.  The Ninth Circuit explained their rationale for affording organ status by comparing two other cases:

In *Gates [v. Victor Fine Foods,* 322 F.3d 635 (9th Cir. 2003)] we held that Alberta Pork, a Canadian marketing board for hog producers formed pursuant to Alberta law, was an organ of the Province of Alberta. *Id.* This was so despite the fact that the Alberta Agricultural Products Marketing Council, which established the board, did not exercise day-to-day control over the board, but had only an "active supervisory role." *Id.* at 1460. The Council could authorize the board to set quotas for hog farmers, require farmers to provide information relating to the production and marketing of specified products, pay service charges, and the like. *Id.* at 1461. Noting the many ways in which the Council could delegate tasks to Alberta Pork, we held that the board was an organ of the Province of Alberta. *Id.*

In *Corporacion Mexicana,* we held that a subsidiary of a Mexican agency that owned and exploited that nation's petroleum resources was an organ of Mexico. The subsidiary was a separate legal entity. It was empowered to own property and carry on business in its own name and was administered by eight board members who were appointed by the federal government. 89 F.3d at 654. The government of Mexico guaranteed the subsidiary's performance. *Id.* In holding that the subsidiary was an organ of Mexico, we quoted the district court's explanation that

"[the subsidiary] is an integral part of the United Mexican States. [It] was created by the Mexican Constitution, Federal Organic Law, and Presidential Proclamation; it is entirely owned by the Mexican Government; is controlled entirely by government appointees; employs only public servants; and is charged with the exclusive responsibility of refining and distributing Mexican government property." *Id.* at 655.

The RCC shares important similarities with the Mexican subsidiary in *Corporacion Mexicana:* Each body was created directly by public law, and the government guaranteed each body's performance. The RCC is even more clearly an organ of a foreign state than Alberta Pork was in *Gates.*

In view of the circumstances of its founding; its funding and financial connection to the government and taxpayers of Japan; its mission; and its purpose, we hold that the RCC is an organ of the Japanese government. It is therefore a "foreign state" within the meaning of the FSIA and is entitled to exercise the rights afforded foreign states under the FSIA.

*Id.* at 641-642. While a number of factors are important in determining organ status, the Supreme Court in *Dole Food Company* looked to whether the entity engages in a public activity on behalf of a foreign government as an important factor. In addressing this issue, the court should look to the purposes of the activities, independence from government, financial support received from the government and the entity's privileges and obligation under law.

After oral argument was held in this case, the deposition of Joseph Brian Curran, President and Chief Executive Officer of PUC, Inc., and PUC Services, Inc., was taken to supplement the record. The parties have provided supplemental briefing on this issue. Defendants argue that the testimony supports a conclusion that defendants were performing traditional government functions generally controlled by the City of Sault Ste. Marie. Mr. Curran testified that PUC Services, Inc., approached the City and expressed an interest in taking over the operation of the two wastewater treatment plants. As a result, the City terminated its existing contract with the Ontario Clean Water Agency and negotiated a contract with PUC Services, Inc. Dep. at 19. Mr. Curran testified that he reports to the City council on a quarterly basis and in an annual general meeting. Dep. at 28. The City does not directly hold shares of PUC Services, Inc. Dep. at 36. In addition to the operation of the East End Water Treatment Plant, PUC Services, Inc., operates water and wastewater facilities for the Village of Desbarats and the Town of Dubreulville. PUC Services, Inc., has also provided sampling and collection of water samples to the Algoma District School Board and the Huron Superior Catholic School Board. Dep at. 39. Mr. Curran stated that the focus of PUC Services, Inc., is to make a profit. Dep. at 44. The City does not retain any direct control of the day to day operation of PUC Services, Inc., or the East End Water Treatment Plant. Dep. at 45. Revenue of profits from PUC Services, Inc., are distributed to PUC, Inc., which in turn are

distributed as interest payments to the City shareholder. Dep. at 51-52. Defendants are both self-funding entities. Dep. at 55-56.

PUC Services, Inc., is an independent company that contracted with the City. Its purpose is to make a profit, the City does not exercise day to day control of PUC Services, Inc., management and operation, it is not run by civil servants, and is not subsidized by the City. Nor is PUC Services, Inc., immune to suit. While the treatment of waste water traditionally has been a public service activity, that activity does not have to be performed by a governmental entity. As with many public services, private corporations are forming to undertake traditional government services and compete for profits in conducting those services. The City is free to contract, as exhibited in this case, with an outside entity to provide this service. Moreover, the City can terminate its contract if allowed under contract, renegotiate or enter into a contract with a different entity upon the expiration of the contract. The City has already terminated one private contractor in the past before replacing that contractor with PUC Services, Inc. There is no indication that the City would support PUC Services, Inc., if PUC Services, Inc., became financially troubled. Further, there has been no indication that profits distributed as interest payments to the City are used by the City to lower sewage treatment rates for its consumer residents. Accordingly, in the opinion of the undersigned, PUC Services, Inc., is an independent corporation that cannot be considered an organ of a foreign state as defined by the FSIA.

Plaintiffs also argue that defendants engaged in commercial activities waiving immunity. Under the FSIA, defendants could waive immunity if they engaged in commercial activity outside the United States that had a direct effect in the United States. 28 U.S.C. § 1605(a)(2). Defendants argue that no commercial activities are involved in the claims raised by

plaintiffs. The complaint raises issues regarding the discharge of sewage from the East End Water Pollution Control Plant. Defendants assert that this is obviously the exercise of a governmental function. Plaintiffs point to the defendants management, operation and maintenance services that are supplied to the village of Desbarats, the town of Dubreulville, and the Algoma District School Board and the Huron Superior Catholic School Board. The controlling question is whether the commercial activity has a direct effect in the United States. *Argentine v. Amerada Hess Shipping Corp.,* 488 U.S. 428 (1989) (federal court lacks jurisdiction in action brought by a Liberian corporation against Argentine Republic for destruction by its military of oil tanker on international waters outside of Argentina). Plaintiff's have not shown that defendant PUC, Inc., performed activities that had a direct effect in the United States. Moreover, PUC, Inc., does not treat water and discharge the water into the St. Mary's river. Defendant PUC Services, Inc., performs that activity. Whether the discharge of treated, partially treated or untreated sewage into the Canadian waters of the St. Mary's River which ultimately may reach plaintiffs' property on Sugar Island, Michigan, could qualify as a direct effect in the United States is an issue that this Court need not decide at this time because PUC Services, Inc., is not an immune foreign sovereign as defined under the FSIA.

Defendants also argue that the Michigan long arm statute does not provide for jurisdiction in any Michigan or Federal court sitting in Michigan, because there exists no minimum contacts in Michigan to invoke jurisdiction. In order to invoke jurisdiction there, defendants must have purposefully availed themselves of the privilege of doing business in Michigan. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985). Plaintiffs argue that defendants satisfy this test by purposefully discharging waste into the St. Mary's River, knowing that the waste would reach Michigan waters. Plaintiffs assert that this case is similar to *CSX Trans. Inc. v. Union Tank Car Co.*,

247 F.Supp2d 833 (E.D. Mich. 2002), where a rail car caught on fire and caused damage while passing through Michigan. Jurisdiction was appropriate against a Canadian rail inspection company because the company could foresee that a negligent inspection could cause damage in Michigan. Michigan's long arm statutes for general and specific jurisdiction "have been construed to grant courts sitting in Michigan the broadest possible scope of personal jurisdiction permitted under the Due Process Clause of the Fourteenth Amendment." *Id*. at 836, citing Mich. Comp. Laws § 600.711 and § 600.715. Accordingly, the test is whether personal jurisdiction exists under the Due Process Clause. *Id*. The Sixth Circuit set forth a three part test: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.*

Similarly, sufficient minimum contacts exist in this case to establish jurisdiction in this court. Clearly, since this case is about improper discharge of human waste into the St. Mary's River which caused damage to property owners down river from the discharge, defendants' alleged activities caused consequences in the State of Michigan. Jurisdiction is reasonable because defendants were aware that if an improper discharge in the St. Mary's River occurred, it was foreseeable that the discharge would reach the Michigan shoreline. If plaintiffs are correct, defendants committed a tort that had foreseeable consequences in the State of Michigan. Accordingly, in the opinion of the undersigned, jurisdiction exists in this case.

Accordingly, it is recommended that defendants' motion to dismiss (Docket #6) be granted in part and that defendant PUC, Inc., be dismissed under the FSIA. It is further recommended that the motion be denied as to defendant PUC Services, Inc.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 2, 2007