UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WELCH, et al

        Plaintiffs,

                                              Hon. Gordon J. Quist

v

                                              2:06-cv-230

PUC SERVICES, INC., an Ontario Corporation,

        Defendant

_____/

and

BEAN, et al

        Plaintiffs,                              Hon. Gordon J. Quist

                                              2:08-cv-158

v

PUC SERVICES, INC., an Ontario Corporation,

        Defendant

_____/

Anthony J. Garczynski (P47146)                      M. Sean Fosmire (P31737)
Attorneys for Plaintiffs                                 Attorney for Defendant
771 North Mill Street                                      1440 West Ridge Street
Plymouth, MI 48170-1423                     Marquette, Michigan 49855
Telephone: (734) 404-2425                  Telephone:  (906) 226-2524

**FIRST MOTION FOR SUMMARY JUDGMENT**

      Defendant PUC Services Inc., by its attorneys Garan Lucow Miller, P.C., moves that this Court grant summary judgment in its favor under Rule 56 of the Federal Rules of Civil Procedure, and in support thereof states:

      1.     The undisputed facts that have been generated in the course of discovery of this case establish that PUC Services Inc. entered into a contract with the City of Sault Ste. Marie, Ontario for a term commencing July 1, 2003.  Under the terms of that contract, PUC Services had the responsibility for the operation of the East End Water Pollution Control

Plant, as well as another WPCP and certain other facilities and structures as part of the City's wastewater collection and treatment system.

2. PUC Services' operation of the East End Plant from 2003 to 2007 – the period of time at issue in this case – was done under the contract with the City of Sault Ste. Marie, Michigan.

3. Plaintiffs do not allege that defendant had a duty separate from and independent of its duty to properly operate the East End Plant under the contract.

4. Plaintiffs' claims involve alleged negligent operation of the East End Plant under the contract.

5. Under Michigan law, a person or company that enters into a contract for the provision of services to another party may not be held liable in tort to a third party, a stranger to the contract, for acts of negligence in the performance of the contract.

FOR THESE REASONS, the defendant requests that it be granted summary judgment under Rule 56, for the reason that there are no genuine issues of material fact between the parties and that the defendant is entitled to judgment as a matter of law.

**GARAN LUCOW MILLER, P.C.**
Attorneys for Defendants

_____/s/_____

Date: April 17, 2009

**M. Sean Fosmire (P31737)**
1440 West Ridge Street
Marquette, Michigan 49855
(906) 226-2524
sfosmire@garanlucow.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WELCH, et al

        Plaintiffs,

v

PUC SERVICES, INC., an Ontario Corporation,

        Defendant
_____/

Hon. Gordon J. Quist

2:06-cv-230

and

BEAN, et al

        Plaintiffs,

v

PUC SERVICES, INC., an Ontario Corporation,

        Defendant
_____/

Hon. Gordon J. Quist

2:08-cv-158

| Anthony J. Garczynski (P47146) | M. Sean Fosmire (P31737) |
|---|---|
| Attorneys for Plaintiffs | Attorney for Defendant |
| 771 North Mill Street | 1440 West Ridge Street |
| Plymouth, MI 48170-1423 | Marquette, Michigan 49855 |
| Telephone: (734) 404-2425 | Telephone: (906) 226-2524 |

**BRIEF IN SUPPORT OF FIRST MOTION FOR SUMMARY JUDGMENT**

The undisputed facts that form the basis of the defendant's motion are established in the deposition of Brian Curran, the Chief Executive Officer of PUC Inc., who gave deposition testimony on April 12, 2007 in Sault Ste. Marie, Michigan. The selections from the deposition testimony that establish these facts are attached as Exhibit 1 to this brief. The essential facts so established are:

    1.    Mr. Curran has been the president and CEO of PUC Inc. since November 2000.

2. PUC Inc. is a holding company which is the 100% shareholder of several subsidiary companies, including PUC Services Inc., PUC Distribution Inc., and PUC Telecom.

3. The City and PUC Services entered into a Wastewater Treatment Services Agreement with a term commencing on July 1, 2003 to operate a number of facilities, including the East End Water Pollution Control Plant, as part of the City's wastewater collection and treatment system.

4. Exhibit number 2 to the deposition (and to this brief) is a copy of the written agreement between PUC Services Inc. and the City for the operation of the wastewater treatment plant.

5. An amendment to the agreement was entered into in January 2007, and marked as Exhibit 3.

6. Under the terms of the contract, PUC Services is generally required to operate the treatment plants pursuant to the applicable requirements of the provincial regulatory agency. (See Section 2.2(a), at page 2 of the contract.)

The operative language of the Agreement includes the following:

> **"Section 2.1 - Retention of PUC Services**
> "The Owner retains PUC Services to provide management, administration and maintenance services, as further described in Schedule 'C' to this Agreement, in respect of the Facility (the 'Services')."
>
> * * *
>
> **Section 2. 2 - Performance of Services**
> (a) PUC Services shall operate the Facility in compliance with all applicable laws, regulations and authorizations. . . all applicable laws, regulations and authorizations except as described in paragraphs 2.2(b) and (c) below and in any of the following circumstances:
>
> > i) The owner not making the capital expenditures reasonably recommended by PUC Services in the estimate as described under §4.6 below;
> > ii) Mechanical failure of any equipment at the facility unless a mechanical failure is due to negligent maintenance or operation by PUC Services;

        iii)     The wastewater transmitted to the facility for treatment does not meet the requirements of the Owners Sewer Use Bylaw or any applicable Law;

        iv)     The wastewater transmitted to the facility for treatment contains contaminants or other substances which cannot be treated or removed by the facility's processes; or,

        v)     The quantity of wastewater transmitted to the facility exceed the facility's design capacity."

Schedule C goes on to define, in detail, the services that are involved in the operation of a wastewater treatment plant.

The controlling principles of law in the State of Michigan, which of course are applicable in this Court by virtue of the *Erie* doctrine, establish that a defendant who has entered into a contract with another party for the provision of services cannot be held liable to a third party, a stranger to the contract, for injuries or damages resulting from alleged negligent performance under the contract.

In this case, because the plaintiffs' claims are based on an allegation that PUC Services Inc. did not operate the plant properly, that principle applies in full force. The plaintiff has not alleged, and the facts of this case do not establish, any duty independent of the obligation under the contract to properly operate the plant. For that reason, the Court should grant summary judgment in favor of the defendant.

**The Fultz case**

In *Fultz vs Union Commerce Associates*, 470 Mich. 460, 683 N.W.2d 587 (2004), the Michigan Supreme Court addressed the recurring question of whether an injured person may

sue a contractor who has the responsibility for the plowing or snow removal on commercial premises. The court held that such an action may not be pursued.

Sandra Fultz was injured when she slipped and fell on an icy parking lot owned by a company named Comm-Co Equities. Comm-Co had contracted with defendant Creative Maintenance Limited for plowing and removing snow from the parking lot of the premises. This was an oral contract rather than a written contract. It appears to have been uncontested that Creative had not plowed the parking lot for approximately 14 hours prior to the time that the plaintiff fell.

The plaintiff sued both Comm-Co and Creative, and the case went to the jury. The jury found the following, which appear to be inconsistent findings:

1. Creative had not breached the contract for plowing and snow removal.
2. Creative had been negligent by failing to perform under the contract.

Based on the second jury finding, the jury awarded damages against Creative as well as against Comm-Co.

The case was taken to the Court of Appeals, which affirmed the jury's verdict, in reliance on the previous case of *Osman v Summer Green Lawn Care, Inc.,* 209 Mich App 703 532 NW 2d 186 (1995). In the *Osman* case, the Michigan Court of Appeals had ruled that a contractor does owe a common law duty to visitors to provide snow removal services in a reasonable manner. (As we will see, however, the factual situation in *Osman* gave the Supreme Court in *Fultz* an opportunity to differentiate the two cases in a very meaningful way.)

The Supreme Court reversed and held that, as a matter of law, the contractor owed no duty, either under contract or under common law, to visitors who are injured as a result of negligence in plowing the lot.

The court noted that the plaintiff was not claiming that she was a third party beneficiary of the contract between Creative and Comm-Co. Rather, she argued that Creative owed her a common law duty to exercise reasonable care in carrying out its work under the contract.

Her argument was based in part on Restatement Torts, 2d, §324A, which provides:

> "One who undertakes, gratuitously or for consideration, to render services for another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to a third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if. . .
>
> "B. He has undertaken to perform a duty owed by the other to the third person."

(Note that this is a provision setting forth a principle of tort law, not of contract law. This brief will address potential contract-based claims in a later section.)

In *Fultz*, the Supreme Court noted that Michigan courts have generally accepted this paragraph from §324A of the Restatement as an accurate statement of Michigan law. It cited a number of decisions from the 1980s which had accepted its formulation. Nonetheless, the court noted that these decisions have to be considered in light of "limiting principles within our case law" – thus limiting the scope of application of §324A.

Over the years, the Court noted, one of those limitations has been a distinction between "misfeasance" (acting negligently) and "nonfeasance" (failure to act). The court cited three cases[1] in support of the position that a tort action cannot be maintained when it is based solely on nonfeasance, that is, an allegation that the contractor failed to act as required under the contract. It quoted from *Williams v Cunningham Drug Stores, Inc.,* 429 Mich. 495, 418 N.W.2d 381 (1988) as follows:

---

[1] *Hart v Ludwig*, 347 Mich 559; 79 NW2d 895 (1956);
*Chase v Clinton Co*, 241 Mich 478; 217 NW 565 (1928);
*Churchill v Howe*, 186 Mich 107; 152 NW 989 (1915)

Page 5

> "The common law has been slow in recognizing liability for nonfeasance because the courts are reluctant to force persons to help one another and because such conduct does not create a new risk of harm to a potential plaintiff."

Citing three other cases[2], the court then noted that both the Supreme Court and the Court of Appeals had previously observed that a claim based on misfeasance under a contractual obligation can arise only from the violation of "a legal duty separate and distinct from the contractual obligation."

Observing, however, that the distinction is "often largely semantic and somewhat artificial", the *Fultz* court rejected the distinction between misfeasance and nonfeasance by noting that it improperly focuses on whether a duty was breached, and noted that it was instead necessary for the court in either case to focus on the threshold issue of "whether a duty exists at all."

It went on to state:

> "Accordingly, the lower courts should analyze tort actions based on a contract and brought by a plaintiff who is not a party to that contract by using a "separate and distinct" mode of analysis. Specifically, the threshold question is **whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations**. If no independent duty exists, no tort action based on a contract will lie."

In the case before it, because the claimed breach of contract was failure to perform the contractual duty of properly plowing or salting the parking lot, the court noted that the claim must fail. It rejected the conclusion by the Court of Appeals that defendant Creative (CML) had "engaged in malfeasance distinct from any breach of contract", and noted:

> "In truth, plaintiff claims CML breached its contract with [the owner] by failing to perform its contractual duty of plowing or

---

[2] *Rinaldo's Constr Corp v Michigan Bell Tel Co*, 454 Mich 65, 84; 559 NW2d 647 (1997);
*Ferrett v Gen Motors Corp*, 438 Mich 235, 245; 475 NW2d 243 (1991);
*Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 48; 649 NW2d 783 (2002)

Page 6

> salting the parking lot. She alleges no duty owed to her independent of the contract. Plaintiff thus fails to satisfy the threshold requirement of establishing a duty that CML owed to her under the 'separate and distinct' approach set forth in this opinion."

The Court stated that reliance by both the plaintiff and the Court of Appeals on the *Osman* case was misplaced, because (it found) the facts in *Fultz* did not establish that a duty was owed separate from the required performance under contract. The *Osman* case, it noted, provided an example of what is meant by a duty separate from the performance under the contract. *Osman* had also involved a snow removal contractor, but the claimed separate act of negligence involved the decision by the contractor to place the snow on a portion of the premises where it was allowed to melt and freeze into ice on an adjacent sidewalk, thus presenting a new and different hazard to members of the public.

By contrast, Creative's snow removal practices in *Fultz* created no new hazard to the plaintiff, and thus involved no violation of a duty separate and distinct from the performance of the contract.

The Supreme Court in *Fultz* ended with the following conclusion:

> "To summarize, if defendant fails or refuses to perform a promise, the action is in contract. If defendant negligently performs a contractual duty or breaches a duty arising by implication from the relation of the parties created by the contract, the action may be either in contract or in tort. "In such cases, however, no tort liability arises from failing to fulfill a promise **in the absence of a duty to act that is separate and distinct from the promise made**."

The ruling in *Fultz* has not been challenged or distinguished in any subsequent decision of the Supreme Court or the Court of Appeals.

*Thoughts on application*

Page 7

The courts in Michigan have not always made it clear what they consider to be a "duty separate from the contractual obligation".

A series of examples could help to elucidate the issue. In a parking lot snow removal case, the duty to properly clear the parking lot of snow is the contractual obligation. If the plowing is done negligently, this is a breach of contract and a breach of duty to the owner, the other party to the contract, but is not a breach of a separate and independent duty owed to people using the lot – even though the plowing may be regarded as being done for their benefit.

As was the case in *Osman*, however, if it is shown that the defendant, in the course of performing under the contract, created a new hazard in the course of its work, this could satisfy the requirement of a new and independent action.

Similarly, if there is a pedestrian who is walking across the lot as the plowing is being done, and he is run down because the operator did not see him, claims of negligence against the operator would be based on a duty of due care separate and independent of the contractual obligation.

One way to highlight the difference between the two concepts is to note that, if there is a separate and independent act of negligence, the contractor can meet his obligations under the contract, but still breach the independent duty to the third party. If the act of negligence claimed is a failure to comply with the contractual obligations, it is not separate and independent.

In our case, similarly, if an employee of PUC Services ran over a pedestrian while driving a vehicle at the plant in the course of his employment, PUC Services would be liable for his negligence, even though the work was done in the course of the contract, because the

Page 8

duty to operate the vehicle carefully is a common law obligation that is separate and independent of the duty to properly perform under the contract.

As another example, if a truck carrying dewatered sludge from the East End plant had overturned and allowed the contents of the trailer to spill onto the ground, where it made its way to the St. Mary's River and thereby caused contamination of the waterway, this would be an accident occurring as an incident separate and distinct from the operation of the plant, and it could properly support a tort-based claim against PUC Services.

Such a separate and independent obligation, such a distinct event, is not involved here. Plaintiffs in this case simply allege that PUC Services released untreated or partially treated sewage in the effluent released into the St. Mary's River in the course of allegedly improper operation of the plant – that is, improper performance under the contract. Under the authority of *Fultz*, such a claim is not viable under Michigan law.

**Third-party beneficiary cases**

It is helpful to review some of the other cases that have addressed similar issues. It is common for plaintiffs who assert claims based on negligent performance under a contract to attempt to get around the rules that apply in tort cases – whether the rule of governmental immunity or the "no duty" rule established in *Fultz* – by claiming instead that they are third-party beneficiaries of the agreement between the contracting parties.

Michigan cases, however, have established that "incidental beneficiaries" may not maintain a claim as third party beneficiaries under a contract. See *Koenig v South Haven*, 460 Mich 667 (1999) and *Schmalfeldt v North Pointe Insurance Company,* 469 Mich 422 (2003). Further, the rights of third-party beneficiaries are governed under a specific statute, MCL 600.1405. We will first quote the language of the statute and then address the cases.

Page 9

*The statute*

Section 1405 of Michigan's Revised Judicature Act of 1963 provides:

> **600.1405 Rights of third party beneficiaries; contracts included; time promise becomes legally binding; exceptions; promisee's rights; retroactive construction of section.**
>
> Sec. 1405.
>
> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something **directly** to or for said person.
>
> (2)(a) The rights of a person for whose benefit a promise has been made, as defined in (1), shall be deemed to have become vested, subject always to such express or implied conditions, limitations, or infirmities of the contract to which the rights of the promisee or the promise are subject, without any act or knowledge on his part, the moment the promise becomes legally binding on the promisor, unless there is some stipulation, agreement or understanding in the contract to the contrary.
>
> (b) If such person is not in being or ascertainable at the time the promise becomes legally binding on the promisor then his rights shall become vested the moment he comes into being or becomes ascertainable if the promise has not been discharged by agreement between the promisor and the promisee in the meantime. . .

The emphasized "directly to or for" language becomes important when we consider the cases.

*Koenig*

By contrast to *Fultz*, the case of *Koenig v City of South Haven*, 460 Mich. 667, 597 N.W. 2d 99 (1999) involved an effort by a plaintiff to pursue its claim as an alleged third-party

Page 10

beneficiary of a contract. That was the only potentially viable theory available, since a tort claim was barred by the doctrine of governmental immunity.

*Koenig* was a wrongful death claim brought by the family of a teenage girl who was swept off a pier into Lake Michigan in the middle of a storm. The pier in question had been constructed by the Army Corps of Engineers, and the Army Corps then entered into a Memorandum of Understanding (MOU) with the city for the maintenance of the pier. One of the provisions of the MOU was that the city would restrict access to the piers in inclement weather. The court concluded that the decedent was not an intended third party beneficiary of that obligation and that the claim could not be maintained.

When the city was named in the case, it filed a motion for summary disposition. The trial court granted the motion. It left open the question of whether the Memorandum of Understanding was in fact a contract between the city and the Army Corps. It concluded that, even if it were to be regarded as a contract, the decedent was not an intended third party beneficiary of the undertakings contained in it. It concluded that the city had undertaken only the responsibility for the management of the operation of the fence. The court's position was that the Army Corps and the city had made promises to each other, but not promises to "every person who visits the piers."

The Court of Appeals reversed. It noted that the third party beneficiary statute (quoted above) does not restrict potential third party beneficiaries to limited groups. It also concluded that the clear intention of the provision was to promote the safety of individuals who would attempt to use the pier during dangerous weather.

The *Koenig* court quoted from Section 1405, the statute quoted above governing the ability of third party beneficiaries to enforce contracts. It specifically noted the legislature's use of the modifier "directly" in the statute, and noted:

Page 11

> "Simply stated, Section 1405 does not empower just any person who benefits from a contract to enforce it. Rather, it states that a person is a third party beneficiary of a contract only when the promisor undertakes an obligation 'directly' to or for the person."

Recall that the statutory language is:

> "(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something **directly** to or for said person."

The intent of the legislature, the Court concluded, was to ensure that contracting parties were "clearly aware" that the scope of their contractual undertakings encompassed a third party "directly referred to in the contract" before that third party is able to enforce the contract.

The court was not willing to go so far as to state that the third party beneficiary had to be referenced by his proper name in the contract. It believed that the legislature attempted to strike a balance between "an impossible level of specificity" and "no specificity at all." It also noted that the legislature wished to ensure that the law was drafted "with great caution" to avoid creating a disincentive to enter into contracts "because of the fear of unanticipated third party claims."

The court thus concluded that, under both the case law and under the statute, only intended third party beneficiaries and not incidental beneficiaries may enforce a contract as third party beneficiaries.

The court did believe that a class of persons could be considered to be third party beneficiaries if the class was sufficiently described or designated. It cited *Guardian Depositors Corporation v Brown*, 290 Mich 433, 438, 287 NW 798 (1939). The *Guardian* case involved an assumed mortgage. Mr. and Mrs. Trevethan had executed a mortgage in favor of the predecessor to Guardian, and then conveyed the property to Mr. and Mrs. Brown,

Page 12

who assumed the mortgage and agreed to pay it. The court found that Guardian could be regarded as a third party beneficiary of Brown's promise to Trevethan to pay the mortgage, because the holder of the mortgage could be regarded as a "sufficiently described or designated" person or entity.

The court in *Guardian* had cited in passing the case of *Burton v Larkin,* 36 Kan 246, 13 P 398 (1887) for the proposition that a class of persons could be third-party beneficiaries under a contract, if the class is "sufficiently described." The court concluded that this would mean "that the class must be something less than the entire universe, e.g., the public" if Section 1405(1) of the statute were to have any narrowing effect.

*Guardian* thus established the principle that a provision that is intended to protect the public at large cannot be regarded as one giving rise to an obligation to third parties under a third party beneficiary analysis.

The *Koenig* court concluded that the course of dealings between the Army Corps of Engineers and the City of South Haven did not show an intention to benefit any person or class of persons; instead, it was intended to allocate the responsibilities between them as to the restriction of access to the piers. The Army Corps was to furnish and install the fences and gates, and South Haven was to coordinate and control the entrance to the piers during bad weather – that is, to determine when the gates are to be open and closed.

The court recognized that the underlying concern was "undoubtedly" the safety of the public. But was it a concern for the public as a whole or for a certain identifiable segment of the public? The court referred for guidance to the case of *Greenlees v Owen Ames Kimble Company,* 340 Mich. 670, 66 N.W.2d 227 (1954). *Greenlees* involved a contract between a landlord and a remodeling contractor. The plaintiff seeking damages was a tenant which operated a furrier business in the building, and he claimed that the contractor's drilling

Page 13

resulted in dust damage to his furs. He claimed to be an intended third party beneficiary of the remodeling contract, which had included a specific provision that the work was to be done "in such a way as to cause a minimum of disturbance to the daytime operations in the building." The court found that the designation of intended beneficiaries was sufficiently specific because it was intended to benefit "the tenants as a class who are habitually carrying on the daytime operations in the building."

Note that the "minimum disturbance" provision was a separate promise, an undertaking distinct from the general agreement to do the remodeling – precisely what *Fultz* refers to as a separate and distinct obligation, under its tort analysis.

The Court held that, despite the fact that he was not designated by name as the person for whose benefit the provision had been added, the furrier was within a limited and definable class of people who were intended to be protected. In so doing, it drew a line differentiating the tenants from those person who might be no more than incidentally benefitted by the contract.

> "The principle that one not a party or privy to a contract but who is the beneficiary thereof is entitled to maintain an action for its breach is not so far extended as to give to a third person who is only indirectly and incidentally benefitted by the contract the right to sue upon it. **An incidental beneficiary has no rights under the contract.** A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefitted does not give him a right to sue for its breach."

By contrast, the court in *Koenig* noted that the Memorandum of Understanding only referenced the public generally and included no provision that South Haven undertake to do anything directly for a designated class of persons that included the decedent. It observed:

Page 14

> "Here, had the MOU more specifically described a class of beneficiaries, e.g., anglers, or swimmers, instead of using the all encompassing term 'the public', there could be no doubt that the parties would have been aware that they were directly undertaking to benefit the particular class."

It should be noted that the *Koenig* court referred to a "designated" person or class of persons, rather than simply "an identifiable" person or class. Nonetheless, the analysis that was followed by the court in the *Greenlees* case suggests that explicit designation of beneficiaries under the contract is not required. The *Greenlees* case did not require that the furrier be specifically identified by name or even by designation as a business owner in the building. Rather, the court appears to have concluded that the purpose of the limitation in the language was to ensure that the current tenants of the building – whoever they were – would not be affected by the operations.

*Brunsell*

In *Brunsell v. City of Zeeland,* 467 Mich. 293; 651 N.W.2d 388 (2002), *reh den* 467 Mich. 1210; 653 N.W.2d 405 (2002), the plaintiff sustained a fractured left wrist when she tripped and fell on a sidewalk, as a result of a "crack between, and a difference in elevation in, adjoining sidewalk slabs". The premises were owned by a bank but had been leased to the City, and the lease agreement provided that the City would "repair the improvements which it constructs on the premises as may be necessary for the public safety." Plaintiff claimed that she was a third-party beneficiary of this undertaking. As in *Koenig*, a tort claim was precluded by the governmental immunity statute.

At all levels – trial court, Court of Appeals, and Supreme Court – it was held, following the rationale in *Koenig*, that the plaintiff had not established that she was a member of a

Page 15

"sufficiently defined class" that was within the contemplation of the parties to the lease. In its decision, the Supreme Court noted:

> "An objective analysis of the contract at issue indicates that the contractual provision at issue was intended to delineate the obligations of the city and the bank with regard to the premises, not to directly benefit third parties. . . With regard to its promise, the city was assuring the bank that the bank would not be responsible for repairing the improvements on the premises to protect public safety. There is no reason to conclude that the bank, obviously a business and not a charitable institution, was acting to protect parties other than itself in receiving this promise."

*Schmalfelt*

The case of *Schmalfelt v. North Pointe Insurance Company*, 469 Mich. 422; 670 N.W.2d 651 (2003), involved a patron who was injured in an assault in a bar, and who claimed benefits under the "medical payments" provision of the policy issued by North Pointe to the bar. Citing both *Koening* and *Brunsell*, the Supreme Court held that plaintiff was not an intended beneficiary of the insuring agreement. He was no more than an "incidental beneficiary", no different from any other patron of the bar. The purpose of this provision was not to protect his interests:

> "The contract primarily benefits the contracting parties because it defines and limits the circumstances under which the policy will cover medical expenses without a determination of fault. This agreement is between the contracting parties, and Schmalfeldt is only an incidental beneficiary without a right to sue for contract benefits."

**Conclusion**

Based on the *Fultz* case, a tort claim brought by plaintiffs who claim to have suffered damages downstream from the East End plant can not be permitted, since the treatment of

Page 16

wastewater and the release of properly treated effluents was the very core of the performance by PUC Services under its contract with the City of Sault Ste. Marie, Ontario. The actions which form the basis of the plaintiffs' claims did not involve any duties, undertakings, or activities separate and distinct from its obligations under its contract with the City of Sault Ste. Marie, Ontario. The Sugar Island residents have not alleged that their claims are based upon a violation of an obligation separate from the recognized contractual duty on the part of PUC Services to properly operate the plant.

Further, an analysis under contractual provisions would not lead to a different result. Since the obligation to properly treat municipal wastewater is imposed for the protection of the public at large, and not for the residents of Sugar Island as an identifiable intended class of protected persons, they cannot argue that they are third-party beneficiaries of the obligations under the contract, as clarified and explained under *Koenig*, *Brunsell*, and *Schmalfelt*.

*Application to this case*

The facts of this case fit precisely into the reasoning of the cases discussed above. The obligations that are imposed on PUC Services as the operator of the East End Plant are imposed for the general protection of the public, and for the health and well being of the environment, not for any specified and identified subset of members of the public. Further, as was the case in both *Koenig* and *Brunsell*, the language of Section 2.2 of the agreement as quoted at page 2 of this brief represents a careful and well considered allocation of responsibilities between the City as owner and PUC Services as contractor, not an undertaking for the purpose of providing a direct benefit to an identifiable set of third parties.

For these reasons, defendant should be granted summary judgment under Rule 56.

|  |  |
|---|---|
|  | **GARAN LUCOW MILLER, P.C.**<br>Attorneys for Defendants |
| Date: April 17, 2009 | _____/s/_____<br>**M. Sean Fosmire (P31737)**<br>1440 West Ridge Street<br>Marquette, Michigan 49855<br>(906) 226-2524<br>sfosmire@garanlucow.com |