Case 2:06-cv-00230-GJQ    Document 197    Filed 05/19/2009    Page 1 of 10

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WELCH, et al

    Plaintiffs,

v                                                                                              Hon. Gordon J. Quist

PUC SERVICES, INC., an Ontario Corporation,            2:06 cv 230

    Defendant.

_____/        **ORAL ARGUMENT REQUESTED**

and

BEAN, et al

    Plaintiffs,                                                                    Hon. Gordon J. Quist

v                                                                     2:08 cv 158

PUC SERVICES, INC., an Ontario Corporation,

    Defendant.

_____/

| | |
|---|---|
| Anthony J. Garczynski (P47146) | M. Sean Fosmire (P31737) |
| Anthony J. Garczynski, PLC | Garan Lucow Miller PC |
| Attorneys for Plaintiff | Attorney for Defendant |
| 771 North Mill Street | 1440 West Ridge Street |
| Plymouth   MI   48170-1423 | Marquette   MI   49855 |
| (734) 404-2425 | (906) 226-2524 |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**Oral Argument Requested**

      Defendant's Motion is based on the premise that the undisputed facts do not support Plaintiffs' allegations of Nuisance per se, Public Nuisance and Trespass, and thus Defendant

claims to be entitled to Summary Judgment on these issues pursuant to Federal Rule 56. In support of its motion, Defendant has attached three exhibits describing the operations and design of a wastewater treatment plant, both in general terms and specific to the design of the plant at issue in this case. Whether the East End Wastewater Treatment Plant, as operated by Defendant, complied with these standards, including design standards remains the central issue in this litigation.

Plaintiffs have attached the following exhibits in opposition to Defendant's Motion and in support of their claims for Nuisance and Trespass:

1. Pictures of the St. Mary's River and shoreline properties taken by the Chippewa County Health Department during a pollution investigation in the summer of 2006 [Exhibit 1]
2. Report of Plaintiffs' Expert Dr. Dennis Stainken, PhD, detailing the composition of raw sewage and the illnesses that often result from contact. [Exhibit 2].

**Standard**

Summary judgment is appropriate under Federal Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp* v *Catrett,* 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton* v *Bearden,* 8 F.3d 343, 346; (6th Cir. 1993) (quoting *Anderson* v *Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd.* v *Zenith Radio Corp.,*

475 U.S. 574, 587 (1986). Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore* v *Phillip Morris Companies, Inc.,* 8 F.3d 335, 340 (6th Cir. 1993).

**Nuisance Per Se**

Defendant argues that it is entitled to summary judgment on Plaintiffs' allegations of nuisance per se because a wastewater treatment plant, *when properly operated* (emphasis added), is perfectly safe and beneficial to society. Plaintiffs do not allege that all wastewater treatment plants are nuisances per se, as admittedly the process does serve a beneficial public purpose when operated in accordance with design requirements and environmental regulations. However, Plaintiffs do allege that an over-capacity wastewater treatment plant, providing outdated and inadequate primary treatment until early 2007, is a nuisance per se.

The question as to what constitutes a nuisance per se is a question of law for the court, while it is for the jury to decide whether a particular act or structure or use of property which is not a nuisance per se is a nuisance in fact. *Brown* v *Nichols,* 337 Mich 684, 689; 60 NW2d 907 (1953). **A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings.** *Gerzeski* v *Department of State Highways,* 403 Mich 149, 156-157; 268 NW2d 525 (1978). Once a nuisance per se's existence is alleged and established by proof, a nuisance per se is established as a matter of law. *Id.* at 160.

*Beneficial Public Purpose*

In Defendant's discussion of nuisance per se, it asks this court to balance the public utility of the East End Wastewater Plant consistent with the court's reasoning in *Palmer* v

*Western Michigan University,* 224 Mich App 139; 568 NW2d 359 (1997) and *Ramlik* v *Darling International,* 161 F.Supp.2d 772 (E.D. Mich. 2001). If the activity serves a beneficial public purpose and is capable of being performed in a manner so as not to pose any nuisance, then it cannot be considered a nuisance per se. *Palmer,* 224 Mich App at 144-145. Defendant rests its entire argument on *Ramik* v *Darling International,* 161 F.Supp.2d 772 (E.D. Mich. 2001), a case which considered whether the odors emitted from a rendering plant constituted a nuisance per se. The case also considered a potential violation of zoning ordinances and a rule 65 Motion for injunctive relief. The court in *Ramik* rejected Plaintiffs' contentions that the Defendant's activities constituted a nuisance per se based on a 1926 decision of *Conway* v *Gampel,* 235 Mich 511; 209 NW 562 (1926). The court stated:

> "[a]ccording to the great weight of authority…, slaughter houses are now regarded as prima facie nuisances. A prima facie nuisance is a kind of nuisance in fact, not a nuisance per se. Thus, in light of the case law presented by the Ramik Plaintiffs, this Court cannot conclude that based on that case law, Defendant's activity is a nuisance per se.'

*Ramik,* 161 F.Supp.2d 772 (E.D. Mich. 2001).

While PUC Services, Inc. has cited this decision in support of its reasoning that the public utility of an activity should be analyzed before a determination of whether that activity is found to be a nuisance per se, the court in *Ramik* did not reach this analysis. The decision that the odors at issue did not constitute a public nuisance seems to have been made based solely on prior case law that found that slaughter houses were not regarded as nuisances per se but nuisances in fact. If we were to follow the *Ramik* court's analysis in the present matter, this court could determine that the Defendant's release of untreated and poorly treated human waste into a public waterway is considered a nuisance per se based on prior case law. Although Defendant correctly states that judicial determinations that an activity constitutes a nuisance per se are rare, the

Michigan Supreme Court determined that the disposal of raw sewage in a river was a nuisance per se in *Attorney General ex rel. Wyoming Twp* v *Grand Rapids,* 175 Mich 503; 141 NW2d 890 (1913).

If the court were to consider Defendant's reasoning, the operation of any wastewater plant, in general, could not be considered a nuisance per se because wastewater treatment plants, by definition, serve a beneficial public purpose. Defendant's reasoning is flawed in that Plaintiff has only alleged that the East End Wastewater Treatment Plant, as operated as a over-capacity primary treatment facility by Defendant from 2005 to 2007, constituted a nuisance per se. The plant discharged large quantities of untreated and poorly treated human waste which constituted (1) a public health threat; and (2) an intrinsically unreasonable and dangerous activity which exposed the public and the families of Plaintiffs' to innumerable diseases from exposure to bacterium. Under these circumstances, the East End Wastewater Treatment Plant is a nuisance at all times and under all circumstances, without regard to the care with which it is conducted or maintained. While Defendant is correct in stating that Wastewater Treatment Plants are built and designed to protect the public health, the same plant may constitute an ultra-hazardous or abnormal activity if it is over-capacity, with out-dated equipment and lacks the ability to carry out its intended purpose.

**Public Nuisance**

Defendant has alleged that it is entitled to summary judgment on the issue of public nuisance because Plaintiffs have not alleged claims that are different from those allegedly suffered by the public at large as a result of the discharge of poorly treated and untreated sewage from Defendant's plant. It is imperative to note at this point that the Plaintiffs include both individual property owners and the Township of Sugar Island, a governmental entity.

The word 'nuisance' has been variously defined and is so comprehensive that its existence must be determined from the facts and circumstances of each case. *Ebel* v *Saginaw Co Bd of Rd Comm'rs,* 386 Mich 598, 606; 194 NW2d 365 (1972). Decisions as to what constitutes a public nuisance have been varied under Michigan Law. A public nuisance has been found in the following recent decisions: *Ypsilanti Charter Twp* v *Kircher,* 281 Mich App 251, 761 NW2d 761 (2008) (discharge of raw sewage into a storm drain at an apartment complex); *Capitol Props Group LLC* v *1247 Ctr St, LLC,* No. 281112, (Mich App. April 16, 2009) (noise levels from a neighboring nightclub);.

*The Law of Public Nuisance: Maintaining Rational Boundaries on a Rational Tort,* by Victor E. Schwartz and Phil Goldberg and attached as Defendant's Exhibit 8, states:

> The traditional public nuisance involves blocking a public roadway or, in recent times, dumping sewage into a public river or blasting a stereo when people are picnicking in a public park.... Individuals who have sustained a particular injury, such as harm to one's personal property from the public nuisance, can use the tort to seek compensatory damages.

At its core, "public nuisance includes interference with the public health, the public safety, the public morals, the public peace, the public comfort, and the public convenience of travel." *Ypsilanti Charter Twp* v *Kircher,* 281 Mich App 251, 276; 761 NW2d 761 (2008). "To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several….It is not necessary however, that the entire community be affected, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right." Prosser, Torts, § 71, pp 401, 402. as cited in *Township of Garfield* v *Young,* 348 Mich 337, 342; 82 NW2d 876 (1957).

Nuisance, as set forth under Michigan law, is defined in *Cloverleaf Car Co. v Phillips Petroleum Co,* 213 Mich App 186, 190; 540 NW2d 297 (1995) as an "unreasonable inference with a common right enjoyed by the general public."

> The term "unreasonable interference" includes conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights. A private citizen may file an action for a public nuisance against an actor whether the individual can show he suffered a type of harm different from that of the general public." *Id.* at 190.

In the case at bar, it cannot be disputed that the discharge of untreated sewage and other sanitary items interferes with the public's health, peace, comfort and convenience. Contact with *e-coli,* a bacterium found within the intestinal tracts of humans and found in human fecal material, has been known to cause life threatening illness in both humans and animals. (Plaintiffs' Exhibit 2- Report of Expert Dr. Dennis Stainken).

Defendant correctly states in its motion that there are situations where public and private nuisance concepts may become intertwined when there is particularized harm to specific landowners. Although the Plaintiffs experiencing the influx of raw sewage on the north shore of Sugar Island suffered damages common to all members of the public, these Plaintiffs also had particularized damages resulting from their ownership of property on the north shore. Unlike all members of the public affected by the contamination, Plaintiffs have had their properties stigmatized by the contamination, have had sewage and other sanitary materials wash up onto their properties carried by the currents from the Defendant's outfall pipeline. Some Plaintiffs were faced with the arduous task of repeatedly removing these materials from their beaches and

had to live with the odor emanating from the river on a daily basis. While the general public may have experienced the general health risks associated with contact with the river, these particular Plaintiffs had no choice but to live with the odor, stigma and unsightliness of human waste in the river and on their beaches if they wanted to continue to occupy their homes.

It should also be noted that Defendant's assertion that a private citizen may not file a claim for public nuisance is clearly erroneous. *Cloverleaf Car Co. v Phillips Petroleum Co,* 213 Mich App 186, 190; 540 NW2d 297 (1995), cited by Defendant, held that an action may be brought by a private citizen. *Id.* at 190. Plaintiffs' claims fall with the purview of public nuisance as articulated by Michigan law and Defendant's Motion for Summary Judgment on this count should be denied.

**Trespass**

Plaintiffs further dispute Defendant's allegation that trespass is not recognized as a cause of action under Michigan law when applied to issues of environmental pollution. The Defendant acknowledges, for purposes of this motion, that it is undisputed that Plaintiffs' claims are based on observations of effluent and other sanitary items floating in the St. Mary's River and washing up on the shoreline of Plaintiffs' properties. (Plaintiff's Exhibit 1). These observations were often accompanied by surface water tests which revealed significant levels of e-coli beyond that which is considered safe by both American and Canadian authorities.

Defendant relies on the Michigan Court of Appeals decision *Adams v Cleveland-Cliffs Iron Company,* 237 Mich App 51; 602 NW2d 215 (1999) in support of the proposition that a claim for trespass cannot be supported based on the release of noxious materials. The *Adams* decision involved a trespass claim brought by homeowners that alleged interference from dust, noise, and vibrations from a nearby mine. While Plaintiffs submit that the *Adams* decision does

stand for the premise that a trespass claim cannot be maintained based on the presence of airborne particulates, noise and vibrations, the facts in the current action are distinct from those involved in *Adams*. In its holding, the Michigan Court of Appeals stated:

> Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a ***physical, tangible object*** onto land over which the plaintiff has a right of exclusive possession. (emphasis added). Once such an intrusion is proved, the tort has been established, and the plaintiff is presumptively entitled to at least nominal damages. Where the possessor of land is menaced by noise, vibrations, or ambient dust, smoke, soot or fumes, the possessory interest implicated is that of use and enjoyment, not exclusion….

*Id.* at 67.

The court reasoned that "because noise or vibrations are clearly not tangible objects, we hold that they cannot give rise to an action in trespass in this state. We further hold that dust must generally be considered intangible and thus not actionable in trespass." *Id.* at 69. The court relied on 1 Restatement Torts, 2d, §158, comment I, p 279 stating "Thus, a 'direct or immediate' invasion for purposes of trespass is one that is accompanied by any means that the offender knew or reasonably should have known would result in the physical invasion of the plaintiff's land." *Id.* at 71.

In the current motion, Defendant attempts to equate the "dust particles" at issue in *Adams* with bacteria allegedly released from the East End Plant. However, Defendant fails to recognize that Plaintiffs' allegations include not only the incursion of bacterial organisms, but the physical, tangible solids which accompany these organisms that washed up onto Plaintiffs' properties. There can be little dispute by the parties that human fecal material and other sanitary products are solid objects that can achieve a noticeable and identifiable presence, causing a significant physical invasion beyond that which would be imposed by a dust particle. Consistent with the 1

Restatement Torts relied upon by the Michigan Court of Appeals, clumps of human fecal material caused a direct and immediate invasion onto Plaintiffs' river front properties as a result of the release of these materials from Defendant's wastewater treatment plant. These materials are both physical and tangible, enabling Plaintiffs' to assert claims under trespass law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court DENY Defendant's Motion for Summary Judgment on the Trespass Counts of Plaintiffs' Complaints.

Respectfully submitted,

ANTHONY J. GARCZYNSKI, PLC

_____/s/_____
Anthony J. Garczynski (P47146)
Attorney for Plaintiffs
771 N Mill Street
Plymouth   Michigan   48170-1423
(734) 404-2425
ajg@oldvillagelaw.com

Dated: May 17, 2009